IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JANEECE FIELDS,                )    CIVIL 15-00015 LEK-BMK
                               )
          Plaintiff,           )
                               )
     vs.                       )
                               )
NATIONSTAR MORTGAGE LLC;       )
CHARTER CAPITAL CORPORATION;   )
AURORA LOAN SERVICING LLC;     )
AURORA BANK; STRUCTURED        )
ASSETS SECURITIES              )
CORPORATION, aka SASCO;        )
CITIBANK N.A. AS TRUSTEE FOR   )
THE SASCO MORTGAGE PASS-       )
THROUGH CERTIFICATES 2005-17   )
POOL GROUP 4; LEHMAN BROTHERS  )
HOLDINGS INC.; MORTGAGE        )
ELECTRONIC REGISTRATION        )
SYSTEMS, aka MERS; MERSCORP    )
HOLDINGS, INC.; and DOE        )
ENTITIES 1-50,                 )
                               )
          Defendants.          )
_____)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT
CHARTER CAPITAL CORPORATION'S MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR PARTIAL DISMISSAL OF COMPLAINT**

Before the Court is Defendant Charter Capital

Corporation's ("Charter Capital") Motion for Summary Judgment or,

in the Alternative, for Partial Dismissal of Complaint

("Motion"), filed on June 19, 2015.  [Dkt. no. 24.]  Pro se

Plaintiff Janeece Fields ("Fields") filed her memorandum in

opposition on July 28, 2015, and Charter Capital filed its reply

on August 3, 2015.  [Dkt. nos. 39, 43.]  Defendant Nationstar

Mortgage LLC ("Nationstar") filed a statement of no opposition to

the Motion on July 27, 2015.  [Dkt. no. 35.]

On July 23, 2015, this Court issued an entering order finding the Motion suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules").  [Dkt. no. 30.]  After careful consideration of the Motion, supporting and opposing memoranda, and the relevant legal authority, Charter Capital's Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

## BACKGROUND

On January 15, 2015, Fields filed the Complaint in this case against Defendants Nationstar; Charter Capital; Aurora Loan Servicing LLC ("Aurora"); Aurora Bank; Structured Assets Securities Corporation, also known as SASCO; Citibank N.A., as Trustee for the SASCO Mortgage Pass-Through Certificates 2005-17 Pool Group 4 ("Citibank"); Lehman Brothers Holdings Inc. ("Lehman Brothers Holdings"); Mortgage Electronic Registration Systems, also known as MERS; and MERSCORP Holdings Inc. (all collectively, "Defendants").  Fields asserts that there is diversity jurisdiction.  [Complaint at ¶ VIII.]  The following are the factual allegations that are relevant to the instant Motion.

According to Fields, sometime in August 2005, Charter Capital verbally offered her a refinancing loan with certain terms, and Fields agreed to those terms.  Fields alleges that the

2

mortgage that Charter Capital recorded with in the State of Hawai`i ("Mortgage") does not reflect the terms that she agreed to. She asserts that Charter Capital "misrepresented the terms of the loan and engaged in what is known as a 'bait and switch'." [Id. at § X.] Subsequently, Charter Capital – through its nominee, MERS – executed an Assignment of Mortgage to Nationstar ("Nationstar Assignment"). Fields alleges that she has obtained an expert opinion that the Nationstar Assignment is "invalid and fabricated." [Id. at § XI, p. 4.[1]]

Fields alleges that the Nationstar Assignment is invalid because: Charter Capital "was not the real 'Lender'," and the investors in the SASCO trust and Citibank "are likely to be the true 'Lender'[;]" and the promissory note that her mortgage secures ("Note") was neither transferred to the SASCO trust before the closing date specified in the Pooling and Servicing Agreement ("PSA") nor listed on the trust's publicly filed documents. [Id.] According to Fields, Charter Capital never had ownership of the Note, and therefore was never able to assign it. [Id. at § XI, p. 5.] In addition, Charter Capital fraudulently concealed the fact that Fields's "alleged 'loan' was a security and would restricted [sic] by rules and regulations dictated by

---

[1] Because sections XI through XIV of the Complaint contain multiple paragraphs, spanning multiple pages, the Court's citations to those sections will refer to both the section number and the relevant page number.

the [PSA] and guidelines related to the security." [Id. at § XI, p. 7.]  This allegedly contributed to problems when Fields attempted to negotiate a loan modification with Aurora.  [Id.]

Defendants allegedly conspired to use various misrepresentations and fabricated documents to profit from the securitization of mortgage backed securities, thereby causing Fields economic harm and slandering the title to her property. Fields therefore alleges that the Notice of Default that Defendants recorded is fraudulent, and the judicial foreclosure proceedings that Nationstar instituted are wrongful.[2] [Id. at § XI, pgs. 4-7.]  In particular, she alleges that the conspiracy constitutes a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* [Id. at § XI, p. 6.]

Fields alleges that she paid mortgage insurance premiums with her monthly mortgage payments and that one or more Defendants obtained a $1,280,000 payoff from the insurance carrier for her "alleged Note debt." [Id. at § XII, p. 8.] Fields contends that this payoff extinguished her Note and

---

[2] On February 25, 2014, Nationstar filed its Verified Complaint for Foreclosure against Janeece Fields and Frank Lamonte in the State Court ("Foreclosure Action").  On January 21, 2015, Fields attempted to remove the Foreclosure Action to this district court.  [Nationstar Mortg. LLC v. Fields, et al., CV 15-00020 LEK-BMK ("CV 15-00020"), Notice of Removal of Action, filed 1/21/15 (dkt. no. 2).]  On February 13, 2015, Nationstar filed a motion to remand, which this Court granted on March 31, 2015.  [CV 15-00020, dkt. nos. 9, 22.]

Mortgage, and, to the extent that the payoff exceeded the amount she owed, the balance should have been paid to her.  [Id.] Fields alleges that, because of Defendants' actions, she "has no proper entity against which she can assert affirmative defenses and claims."  [Id. at § XIV, p. 11.]

The Complaint alleges the following claims: misrepresentation ("Count I"); breach of contract ("Count II"); fraud, deceit, and concealment ("Count III"); civil conspiracy ("Count IV"); a claim to cancel the Mortgage and the Nationstar Assignment ("Count V"); quiet title ("Count VI"); "Equitable Bill Quia Timet" ("Count VII");[3] and unjust enrichment ("Count VIII").[4]  [Id. at § IX.]  Plaintiff may have been attempting to raise other allegations in sections XIII and XIV, such as a defense to the foreclosure action, a violation of the

---

[3] The Ninth Circuit has stated:

> A "bill quia timet" was the "equitable bill used to guard against possible or prospective injuries."  Black's Law Dictionary 156 (7th ed. 1999).  "Quia timet is the right to be protected against anticipated future injury that cannot be prevented by the present action."  Id. at 1260 (quoting 27A Am. Jur. 2d Equity § 93, at 581 (1996)).

Robinson v. United States, 586 F.3d 683, 687 n.2 (9th Cir. 2009).

[4] Section IX refers to the unjust enrichment claim as the ninth cause of action, but this appears to be a typographic error because there is no eighth cause of action in § IX, and § XII refers to the unjust enrichment claim as the eighth cause of action.  [Complaint at § XII, p. 7.]

Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and abuse of process.  Plaintiff, however, did not identify those sections as setting forth causes of actions and she did not include them in the list of her causes of action - as she did with Counts I through VIII.  This Court therefore construes sections XIII and XIV as setting forth allegations in support of Counts I through VIII; it does not construe sections XIII and XIV as setting forth affirmative claims.

Fields prays for the following relief: economic and non-economic damages; punitive damages; statutory damages for the RICO violations; equitable and injunctive relief; declaratory relief, including a declaration that the Note and Mortgage are extinguished and rescinded, and *quia timet*; unjust enrichment; orders correcting land records; an order quieting title in her favor; attorneys' fees and costs; and any other appropriate relief. [Id. at pgs. 11-12.]

In the instant Motion, Charter Capital first argues that this Court should grant summary judgment in its favor as to Fields's claims against it.  Charter Capital contends that Fields's claims against it: are barred by the statute of limitations; and fail as a matter of law because the terms of Fields's Mortgage are the same as the terms that she applied for. In the alternative, Charter Capital argues that this Court should dismiss Fields's fraud claims because she failed to plead them

with the particularity required by Fed. R. Civ. P. 9(b).

**DISCUSSION**

## I.   **Procedural Rulings**

On July 28, 2015, concurrently with her memorandum in opposition to the Motion, Fields filed a declaration in support of her opposition ("Fields Declaration"), along with ten exhibits thereto. [Dkt. no. 40.]  In its reply, Charter Capital objects to the Fields Declaration and her exhibits because Fields did not file them in accordance with Local Rule 56.1(h).  Charter Capital argues that, because Fields did not file a proper response to its Concise Statement, [filed 6/19/15 (dkt. no. 25),] this Court should deem the statements of fact in Charter Capital's Concise Statement admitted.  [Reply at 2 n.1.]

Local Rule 56.1 states, in pertinent part:

> **(b)   Opposition Requirements.**  Any party who opposes the motion [for summary judgment] shall file and serve with his or her opposing papers a separate document containing a single concise statement that admits or disputes the facts set forth in the moving party's concise statement, as well as sets forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated.
>
> . . . .
>
> **(g)   Admission of Material Facts.**  For purposes of a motion for summary judgment, material facts set forth in the moving party's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party.
>
> **(h)   Affidavits and declarations.**  Affidavits or declarations setting forth facts and/or

> authenticating exhibits, as well as exhibits themselves, shall only be attached to the concise statement.  Supplemental affidavits and declarations may only be submitted with leave of court.

(Emphases in original.)

The Ninth Circuit has held that "an ordinary *pro se* litigant, like other litigants, must comply strictly with the summary judgment rules."  <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010) (citations omitted).  Although Fields did not file a document titled "concise statement," it is clear from the content of the Fields Declaration that she intended it to be her statement of facts in response to Charter Capital's Concise Statement.  This Court also notes that there is no indication that Charter Capital suffered any prejudice as a result of Fields's failure to comply with Local Rule 56.1.  Therefore, this Court - in the exercise of its discretion - will consider the Fields Declaration, and the exhibits thereto, in ruling on the instant Motion, and it will not deem the statements in Charter Capital's Concise Statement admitted.

This Court CAUTIONS Fields that, if she fails to comply with Local Rule 56.1 when opposing future motions for summary judgment, this Court may strike non-compliant filings and may deem the moving party's concise statements of facts admitted. This Court now turns to the merits of Charter Capital's Motion.

## II.  **Counts I Through VI**

Fields's claims in Counts I, II, III, IV, V, and VI -
regardless of their titles - all sound in fraud.  See, e.g.,
Hancock v. Kulana Partners, LLC, 992 F. Supp. 2d 1053, 1059 (D.
Hawai`i 2014) ("Whether styled as claims for declarative and
injunctive relief, forgery, 'uttering' a forged deed, trespass,
or ejectment, Plaintiff's claims unmistakably sound in fraud.").
Counts I and III expressly allege misrepresentation and fraud.
Count II alleges that Charter Capital breached its oral contract
with Fields by engaging in a "bait and switch" with the written
terms of the Mortgage.  Count IV alleges that Charter Capital was
part of a conspiracy to engage in a fraudulent enterprise
involving the securitization of mortgage backed securities.
Counts V and VI allege that Fields is entitled to cancellation of
the Mortgage and the Nationstar Assignment and to quiet title to
her property because of fraudulent actions by Charter Capital,
among others.

This district court has stated:

> "Personal actions of any nature whatsoever not
> specifically covered by the laws of the State"
> have a limitations period of six years.  [Haw.
> Rev. Stat.] § 657-1(4).  Claims sounding in fraud,
> whether based on state or federal law, are
> governed by this six-year statute of limitations.
> Mroz v. Hoaloha Na Eha, Inc., 360 F. Supp. 2d
> 1122, 1135 (D. Haw. 2005) (citing Eastman v.
> McGowan, 86 Hawai`i 21, 946 P.2d 1317, 1323
> (1997)).

Id. (some citations omitted).  As to when the statute of

limitations period for a fraud-based claim begins to run, this district court stated:

> Under Hawai`i law, constructive notice "arise[s] as a legal inference, where circumstances are such that a reasonably prudent person should make inquiries, [and, therefore,] the law charges a person with notice of facts which inquiry would have disclosed." SGM Partnership v. Nelson, 5 Haw. App. 526, 529, 705 P.2d 49, 52 (1985) (citation omitted; brackets in original).  Although Hawai`i courts have not addressed whether the recording of a deed serves as constructive notice for purposes of a fraud claim, courts in the state have recognized that the recording of a document gives notice to the general public of the conveyance.  See Markham v. Markham, 80 Hawai`i, 274, 281, 909 P.2d 602, 609 (App. 1996) (noting that the "central purpose of recording a conveyance of real property is to give notice to the general public of the conveyance and to preserve the recorded instrument as evidence").

Id. at 1061 (alterations in Hancock).  In that case, the district court concluded that "a publicly record document . . . provides constructive notice where the document itself constitutes evidence of the fraud." Id. (citations omitted).

## A.  **Counts I and II**

In the instant case, Counts I and II are based on the allegation that Charter Capital fraudulently included terms in Fields's Mortgage that were contrary to the terms that she agreed to when she entered into an oral agreement regarding the refinancing of her loan.[5]  Based on Fields's allegations, the

---

[5] The Complaint does not have separate sections for each count.  Instead, Fields describes Counts I and II together in
(continued...)

Mortgage itself constitutes evidence of the alleged fraud.  The
Mortgage was recorded with the State of Hawai`i Office of the
Assistant Registrar of the Land Court on August 30, 2005 as
Document Number 3319506, Transfer Certificate of Title Number
767,528.  [Charter Capital's Concise Statement, Decl. of Mark
Lachtman ("Lachtman Decl."), Exh. F (Mortgage) at 1.]  Thus,
Fields is charged with constructive knowledge of the contents of
the Mortgage on August 30, 2005.  See Hancock, 992 F. Supp. 2d at
1061.  Further, Fields arguably had actual notice of the contents
of the Mortgage when she signed the document before a notary on
August 19, 2005.  [Mortgage at 13-14.]  Whether the statute of
limitations began to run on August 19, 2005 or August 30, 2005,
Fields failed to file her Complaint within six years.

      This Court FINDS that there are no genuine issues of
material fact as to Counts I and II, and CONCLUDES that Charter
Capital is entitled to judgment as a matter of law as to those
claims because they are barred by the applicable statute of
limitations.  See Fed. R. Civ. P. 56(a) ("The court shall grant
summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law.").  This Court therefore GRANTS

---

      [5](...continued)
section X, Counts III through VI together in section XI, and
Counts VII and VIII together in section XII.  [Complaint at pgs.
3-8.]

Charter Capital's Motion as to the claims against it in Counts I and II.

**B.    Counts III Through VI**

As to Charter Capital, Counts III, IV, V, and VI allege that it was part of a conspiracy to defraud Fields because it was not the real Lender of her loan.  Fields, however, does not contest the fact that she entered into a loan agreement with Charter Capital and that she signed the Mortgage and the Note, which the Mortgage secured.  See Fields Decl. at ¶¶ 4-5 (denying that she signed the Notice of Assignment, Sale and or Transfer and the Notice of Servicing Transfer Letter);[6] Complaint at § X ("Plaintiff acknowledges she owes money to someone, but denies that she owes money to CHARTER or NATIONSTAR and she denies agreeing the [sic] terms recited in the alleged Mortgage and the alleged Note."); Mem. in Opp. at 2 ("Plaintiff owed (and still owes) money to someone, the real creditor." (emphasis omitted)).  The Mortgage identifies the Lender as Charter Capital Corporation, doing business as Capital Group, Inc., and MERS as the mortgagee, acting as a nominee for the Lender and the Lender's successors and assigns.  [Mortgage at 1-2.]  Charter Capital also submits a declaration by its president, Mark Lachtman, who states that Charter Capital loaned $999,000 to

---

[6] Fields has not made a similar denial as to either the Note or the Mortgage.

12

Fields in 2005 as part of a refinancing loan, with Fields's property as collateral.  [Lachtman Decl. at ¶¶ 3-7.]  Fields has not presented any evidence to contest this evidence.

### 1.   Show Me the Note Theory

The Complaint also alleges that Charter Capital is not the real Lender because Fields's Note "was never actually transferred or delivered to" Charter Capital.  [Complaint at § XI, p. 5.]  Based upon this allegation, viewed in the context of the other allegations in this section, this Court construes this portion of Counts III, IV, V, and VI as asserting a "show me the note" theory.  "This court, however, continues to follow the well-established rule rejecting this 'show me the note theory.'"  Schwartz v. Bank of Hawaii Corp., Civil No. 12-00267 JMS-KSC, 2012 WL 3841294, at *5 (D. Hawai`i Sept. 4, 2012) (citing Pascual v. Aurora Loan Servs., 2012 WL 2355531, at *7 (D. Haw. June 19, 2012) (explaining that "courts have soundly rejected borrowers' claims based on a lender's non-possession of and/or failure to produce the [] note.")).  Thus, to the extent that Counts III through VI are based on a "show me the note" theory, those claims fail as a matter of law.

### 2.   Fraud in the Nationstar Assignment

Fields also alleges that Charter Capital committed fraud when it assigned her Note and Mortgage to Nationstar on May 15, 2013 because it no longer owned her loan.  She also

alleges that the foreclosure by Nationstar is "an illegal and unenforceable act." [Complaint at § XI, p. 5.]  Fields argues that, on February 25, 2015, Nationstar filed a Complaint for Foreclosure based on the Nationstar Assignment, which is dated May 15, 2013 and recorded on June 2, 2013.  [Mem. in Opp. at 3; Fields Decl., Exh. 1 (Nationstar Assignment).]  Fields "disputes the truth and validity of the Assignment of Mortgage and asserts that it is a false and fabricated document."  [Mem. in Opp. at 3.]  Thus, she contends that the foreclosure is unlawful because the Nationstar Assignment is invalid.

Charter Capital has presented evidence that it sold Fields's Note and Mortgage to Lehman Brothers Bank, FSB ("Lehman Brothers") and transferred the servicing of Fields's loan to Aurora, effective October 1, 2005.  [Lachtman Decl. at ¶¶ 11-12; id., Exh. G (Notice of Assignment, Sale or Transfer of Servicing Rights ("Notice of Lehman Brothers Assignment")), Exh. H (Notice of Servicing Transfer Letter ("Notice of Aurora Transfer")).] The Notice of Lehman Brothers Assignment has a signature for Borrower Janeece Fields, on August 19, 2005.  Fields denies signing the notices.  [Fields Decl. at ¶¶ 4-5.]  She also expressly states that she "do[es] not recall ever seeing [the Notice of Lehman Brothers Assignment] before these recent lawsuits."  [Id. at ¶ 4.]  Fields, however, does not make a similar representation regarding the Notice of Aurora Transfer.

The Mortgage states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information [the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2605, *et seq.*,] requires in connection with a notice of transfer of servicing. . . .

[Mortgage at 11, § 20.]

The only other theory of alleged fraud by Charter Capital that Fields expressly alleges in Counts III, IV, V, and VI is the theory that Charter Capital committed fraud by assigning her loan to Nationstar on May 15, 2013 when Charter Capital no longer owned the loan.  However, the Nationstar Assignment states, in pertinent part:

> FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc. (MERS), solely **as nominee for Charter Capital Corporation DBA First Capital Group, Inc., its successors and assigns**, does hereby transfer without recourse to Nationstar Mortgage, LLC, a Delaware Limited Liability Company, . . . all of its right, title and interest in and to that certain Mortgage executed by JANEECE FIELDS on August 19, 2005, and filed on August 30, 2005 in the Office of the Assistant Registrar of the Land Court, State of

> Hawaii, as Document No. 3319506 and noted on
> Transfer Certificate of Title NO. 973,086.

[Nationstar Assignment at 1 (bold emphasis added).]  Thus,

according to the language of the Nationstar Assignment, MERS did

not necessarily execute the document as Charter Capital's

nominee; it executed the document as the nominee for Charter

Capital's **successors and assigns**.  See also id. at 2 ("Signed on

the 15th day of May 2013.  Mortgage Electronic Registration

Systems, Inc. (MERS), solely as nominee for Charter Capital

Corporation DBA First Capital Group, Inc., its successors and

assigns").

　　　This Court therefore FINDS that there is no genuine

issue of material fact as to the claims Fields alleges against

Charter Capital in Counts III, IV, V, and VI based on her theory

that Charter Capital was never the true owner of her loan, her

"show me the note" theory and her theory that Charter Capital

committed fraud in the Nationstar Assignment.[7]  This Court

CONCLUDES that Charter Capital is entitled to judgment as a

matter of law as to those portions of Counts III, IV, V, and VI.

---

[7] This Court acknowledges that Fields has arguably raised a
genuine issue of fact as to whether she received the Notice of
Lehman Brothers Assignment and the Notice of Aurora Transfer.
That issue, however, is not material and did not preclude this
Court from granting summary judgment as to the portions of Counts
III, IV, V, and VI that this Court addressed supra.  The issue is
not relevant to the theories of liability that Fields alleges in
those claims.  See Miller v. Glenn Miller Prods., Inc., 454 F.3d
975, 987 (9th Cir. 2006) ("A fact is material if it could affect
the outcome of the suit under the governing substantive law.").

### 3.   Other Allegations

In her memorandum in opposition, Fields appears to allege that Charter Capital violated RESPA and breached the Mortgage by failing to provide her with notice of the sale of her loan to Lehman Brothers and the transfer of the servicing of her loan to Aurora.  However, those claims are not before this Court because Fields did not assert them in the Complaint.

As previously noted, Fields states that she did not see the Notice of Lehman Brothers Transfer until this lawsuit, and she denies that she signed the notice.  As to the Notice of Aurora Transfer, Fields denies signing it, and she points out that there is no signature on the version of the notice that Charter Capital has presented to this Court.  [Fields Decl. at ¶¶ 4-5.]  In Counts III through VI, Fields alleges that Defendants - without specifying which ones - "engag[ed] in concealment, deceit and fraudulent misrepresentation and fabrication of documents."  [Complaint at § XI, p. 4.]  Fields's allegation that Charter Capital fabricated the Notice of Lehman Brothers Transfer and the Notice of Aurora Transfer (collectively "Transfer Notices") arguably falls within the scope of the allegations in Counts III through VI, and Fields has arguably raised a genuine issue of fact as to those documents.  Thus, to the extent that Charter Capital seeks summary judgment as to Fields's claim that Charter Capital fabricated the Transfer

17

Notices, the Motion is DENIED.

Charter Capital also argues that, to the extent that this Court does not grant summary judgment, it should dismiss Fields's remaining fraud claims because she did not plead them with the required particularity.  This Court must review Fields's purported claims based on the fabrication of the Transfer Notices under the following standard to determine whether she has sufficiently pled fraud claims:

> [Fed. R. Civ. P.] 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Pursuant to Rule 9(b), a party is required to make particularized allegations of the circumstances constituting fraud.  See Sanford v. MemberWorks, Inc., 625 F.3d 550, 557–58 (9th Cir. 2010).
>
> In their pleadings, Plaintiffs "must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice."  See Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1042 (9th Cir. 2010) (citation omitted).  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b); see also Odom v. Microsoft Corp., 486 F.3d 541, 554 (9th Cir. 2007) (en banc) ("[T]he state of mind — or scienter — of the defendants may be alleged generally." (citation omitted)); Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973) (stating that Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations" (citations omitted)).
>
> When there are multiple defendants,
>
> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but

> require[s] plaintiffs to differentiate their
> allegations when suing more than one
> defendant . . . and inform each defendant
> separately of the allegations surrounding his
> alleged participation in the fraud.   In the
> context of a fraud suit involving multiple
> defendants, a plaintiff must, at a minimum,
> identif[y] the role of [each] defendant[] in
> the alleged fraudulent scheme.
>
> Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir.
> 2007) (alterations in Swartz) (internal quotation
> marks and citations omitted); see also Meridian
> Project Sys., Inc. v. Hardin Constr. Co., 404 F.
> Supp. 2d 1214, 1226 (E.D. Cal. 2005) ("When fraud
> claims involve multiple defendants, the complaint
> must satisfy Rule 9(b) particularity requirements
> for each defendant." (citations omitted)).

Barker v. Gottlieb, 23 F. Supp. 3d 1152, 1164-65 (D. Hawai`i

2014) (alterations in Barker) (some citations omitted).

        The portions of Counts III through VI based on the

allegation that Charter Capital fabricated the Transfer Notices

are not pled with sufficient particularity to meet these

standards.   The Complaint does not identify: the fabrication of

the Transfer Notices as the specific fraudulent act that Fields's

claims are based upon; Charter Capital as the Defendant that

allegedly committed those acts; and the time and place where

Charter Capital allegedly committed them.   This Court therefore

GRANTS the Motion and DISMISSES the portions of Counts III

through VI based on the allegation that Charter Capital

fabricated the Transfer Notices.

        The Ninth Circuit has recognized that: "A district

court should not dismiss a pro se complaint without leave to

amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." <u>Akhtar v. Mesa</u>, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal quotation marks omitted).  This Court finds that it is possible for Fields to amend her Complaint to plead her claims against Charter Capital based on the fabrication of the Transfer Notices with the particularity required for fraud claims.  However, this Court notes that both of the Transfer Notices are effective October 1, 2005.  Fields did not file this action within six years after that, <u>see</u> <u>Hancock</u>, 992 F. Supp. 2d at 1059, and Charter Capital has argued that all of Fields's fraud claims are time barred.  This Court cannot find that it is absolutely clear that Fields cannot cure this defect by amendment.  Thus, dismissal with prejudice is not warranted in this case.  Fields may be able to plead allegations that, if proven, would establish that the statute of limitations was tolled.  <u>See, e.g.</u>, <u>Moddha Interactive, Inc. v. Philips Elec. N. Am. Corp.</u>, No. CIV. 12-00028 BMK, 2015 WL 1064621, at *11 (D. Hawai`i Mar. 10, 2015).[8]  The dismissal of Fields's claims against Charter Capital

---

[8] In <u>Moddha Interactive</u>, this district court stated:

> "A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." <u>Hexcel Corp. v. Ineos Polymers, Inc.</u>, 681 F.3d 1055, 1060 (9th Cir.
> (continued...)

in Counts III, IV, V, and VI that are based on the alleged
fabrication of the Transfer Notices is WITHOUT PREJUDICE.

## III. **Counts VII and VIII**

Count VII, the *quia timet* claim, and Count VIII, the
unjust enrichment claim, allege that one or more of Defendants
received "approximately $1,280,000" in proceeds from the mortgage
insurance on Fields's loan. [Complaint at § XII, p. 8.] Fields
alleges that this payoff "extinguished the alleged Note and
Mortgage as a matter of law" and that she suffered damages
because the Defendant, or Defendants, that received the payoff
failed to pay her the difference between the amount of the payoff
and the amount that remained due on her loan. [Id.]

First, there is no evidence in the record which
indicates that Charter Capital received proceeds from the
mortgage insurance on Fields's loan. Moreover, the Mortgage

---

[8](...continued)
2012). Fraudulent concealment involves the
actions taken by a liable party to conceal a known
cause of action, and has been defined as
"employment of artifice, planned to prevent
inquiry or escape investigation, and mislead or
hinder acquirement of information disclosing a
right of action." Hancock v. Kulana Partners,
LLC, 992 F. Supp. 2d 1053, 1062 (D. Haw. Jan. 10,
2014) (quoting Au [v. Au], 626 P.2d [173,] 178
[(1981)]) (internal quotation marks and brackets
omitted). In order for the doctrine of fraudulent
concealment to apply, "[t]he acts relied on must
be of an affirmative character and fraudulent."
Id. (quoting Au, 626 P.2d at 178).

2015 WL 1064621, at *11 (some alterations in Moddha Interactive).

expressly states:

> 10.  Mortgage Insurance.  If Lender required
> Mortgage Insurance as a condition of making the
> Loan, Borrower shall pay the premiums required to
> maintain the Mortgage Insurance in effect. . . .
>
> Mortgage Insurance reimburses Lender (or any
> entity that purchases the Note) for certain losses
> it may incur if Borrower does not repay the Loan
> as agreed.  **Borrower is not a party to the
> Mortgage Insurance.**

[Mortgage at 7, § 10 (emphasis added and some emphases omitted).]

This Court therefore FINDS that there is no dispute of material

fact as to Fields's claims in Counts VII and VIII against Charter

Capital, and it CONCLUDES that Charter Capital is entitled to

judgment as a matter of law as to those claims.

Charter Capital's Motion is GRANTED as to Counts VII

and VIII.

## IV.  <u>Summary and Leave to Amend</u>

This Court has denied summary judgment to Charter

Capital as to Fields's claims based on Charter Capital's alleged

fabrication of the Transfer Notices.  This Court has granted

summary judgment in favor Charter Capital as to all of Fields's

other claims against it.

To the extent that Fields attempts to base Counts III,

IV, V, and VI on the allegation that Charter Capital fabricated

the Transfer Notices, this Court has concluded that Fields failed

to plead those claims with the particularity required for fraud-

based claims.  Those claims have been DISMISSED WITHOUT

22

PREJUDICE.   This Court GRANTS Fields leave to file an amended complaint to cure the defects in those portions of Counts III, IV, V, and VI.   If Fields wishes to amend these claims, she must file an amended complaint by **September 30, 2015**.   Fields's amended complaint must include all of the claims that she wishes to pursue, as well as **all** of the allegations that her claims are based upon, even if she previously presented those allegations in the original Complaint.   She cannot incorporate any part of the original Complaint into the amended complaint by merely referring to the Complaint.

This Court CAUTIONS Fields that: 1) if she fails to file her amended complaint by **September 30, 2015**, this Court will issue an order dismissing with prejudice all of the claims that this Order dismissed without prejudice; or, 2) if any claim in the amended complaint fails to cure the defects identified in this Order, this Court will dismiss that claim with prejudice.

This Court emphasizes that it has not granted Fields leave to make other changes, such as adding new parties, claims, or theories of liability.   If Fields wishes to do so, she must file a motion for leave to amend pursuant to Fed. R. Civ. P. 15(a)(2).[9]

_____

[9] For example, she must file a motion for leave to amend if she wishes to add: claims that Charter Capital violated RESPA and breached the Mortgage by failing to provide her with notice of the sale of her loan to Lehman Brothers and with notice of the

(continued...)

## CONCLUSION

On the basis of the foregoing, Charter Capital's Motion for Summary Judgment or, in the Alternative, for Partial Dismissal of Complaint, filed June 19, 2015, is HEREBY GRANTED IN PART AND DENIED IN PART.  The Motion is DENIED as to Charter Capital's request for summary judgment as to Fields's claims based on the allegation that Charter Capital fabricated the Transfer Notices.  The Motion is GRANTED as to: Charter Capital's request for summary judgment as to all of Fields's other claims against it; and Charter Capital's request to dismiss the portions of Counts III, IV, V, and VI based on the allegation that Charter Capital fabricated the Transfer Notices.  The dismissal of those claims is WITHOUT PREJUDICE.

If Fields chooses to file an amended complaint, she must do by **September 30, 2015**, and the amended complaint must comply with the terms of this Order.

IT IS SO ORDERED.

---

[9](...continued)
transfer of the servicing of her loan to Aurora; or any of the claims that she attempted to describe in sections XIII and XIV of the Complaint.

DATED AT HONOLULU, HAWAII, August 31, 2015.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**JANEECE FIELDS VS. NATIONSTAR MORTGAGE LLC, ET AL; CIVIL 15-00015 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CHARTER CAPITAL CORPORATION'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL DISMISSAL OF COMPLAINT**